1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ARMIS ARRENDONDO,

    Plaintiff,

v.

D.W. NEVEN, *et al*.,

    Defendants.

Case No. 2:09-CV-02158-KJD-VCF

**ORDER**

      Before the Court is Howard Skolnik, Isidro Baca, Dwight Neven, Romeo Aranas, M.D., Rex Reed, Larry Wuest, Dwayne Deal, Duane Graham, Ted Nielson, and Cole Morrow's (collectively "Defendants") Unenumerated Motion to Dismiss (#23).  Plaintiff filed an opposition (#31) and Defendants filed a reply (#32).  Plaintiff filed Sur-Response (#39) to Defendants' reply.  Defendants filed a Motion to Strike (#42) Plaintiff's Sur-Response.

      Also before the Court is the Motion for Summary Judgment (#25) filed by Defendants. Plaintiff filed a response (#33) and Defendants filed a reply (#43).  Plaintiff filed a Sur-Reply (#45) and Defendants filed a Motion to Strike the Sur-Reply (#50), to which Plaintiff responded (#54).

1    Also before the Court is the Defendants' Supplemental Motion for Summary Judgment (#49)

2    to which Plaintiff responded (#55) and Defendants Replied (#58).

3    I. Background

4    Plaintiff filed this action on June 21, 2010. (Dkt.# 12). Plaintiff filed an amended complaint

5    on July 23, 2010, and the Court issued a screening order giving Plaintiff the opportunity to amend his

6    complaint once more on January 24, 2011 (Dkt.# 13, 17). Plaintiff filed a second amended complaint

7    ("SAC") on February 28, 2011, and the Court issued a second screening order on May 9, 2011 (Dkt.#

8    18, 19).

9    Four claims survive: (1) Count I alleging a deprivation of Due Process for being housed in

10   administrative segregation from June 2005 through October 2010 without a hearing; (2) Count II

11   stating an Eighth Amendment violation for deliberate indifference to a serious medical need; (3)

12   Count VI alleging a violation of the First Amendment due to interference with a legal order in one of

13   Plaintiff's criminal cases; and 4) Count VII alleging a violation of the Eighth Amendment based on

14   an event that took place February 5, 2010, involving the use of force by prison staff.

15   II.  Motions to Strike

16   Plaintiff did not seek leave to file his Response to Defendants' Reply in Support of

17   Defendants' Motion to Dismiss (#39) or his Sur-Reply to the Motion for Summary Judgment (#45).

18   Plaintiff belatedly moved the Court to accept the Sur-Reply (#54).  Plaintiff's request is denied.  The

19   Court will not consider the documents filed by Plaintiff and the Motions to Strike are granted.

20   Plaintiff is further advised that adherence to the Federal Rules of Civil Procedure and the Local

21   Rules is mandatory for all parties. See McHenry v. Renne, 84 F.3d 1172, 1180 (9th Cir. 1996)

22   (failure to comply with the Federal Rules "impose[s] unfair burdens on litigants and judges," wastes

23   time, and "prejudic[es] litigants in other case who follow the rules").

24

25

26

III.  Motion to Dismiss

Count VI of the Plaintiff's SAC alleges violation of his First Amendment rights when prison staff allegedly "withheld, destroyed, intercepted and/or did not deliver legal mail to Plaintiff."  (#18 SAC at 25.)

A. Legal Standard for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff has plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The Iqbal evaluation illustrates a two prong analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  Id. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  Id. at 1951.  If the allegations state plausible claims for relief, such claims survive the motion to dismiss.  Id. at 1950.

Plaintiff is representing himself *pro se*.  Courts must liberally construe the pleadings of *pro se* parties.  See United States v. Eatinger, 902 F.2d 1383, 1385 (9th Cir. 1990).  However, pro se litigants must supply a minimum factual basis for the claims they assert against defendants.  Brazil v. U.S. Dept. of Navy, 66 F.3d 193, 199 (9th Cir. 1995).

B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1996 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2002). Failure to exhaust administrative remedies is an affirmative defense and the defendants bear the burden of raising and proving failure to exhaust. Jones v. Bock, 549 U.S. 199, 212-14 (2007).  Proper exhaustion requires that the plaintiff

utilize all steps made available by the agency and comply with the agency's deadlines and other procedural rules. Woodford v. Ngo, 548 U.S. 81, 89-90 (2006). Proper exhaustion must be completed before a complaint may be filed. Id. at 83-84. See Roberts v. Klein, 770 F. Supp. 2d 1102 (D. Nev. 2011). A nonexhaustion defense should be raised in an unenumerated Rule 12(b) motion rather than in a motion for summary judgment. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.2003). In deciding such a motion, the district court may look beyond the pleadings and decide disputed issues of fact. Id.

Defendants submit evidence showing that Plaintiff failed to exhaust his administrative remedies pursuant to Administrative Regulation ("AR") 740.  AR 740 requires one informal and two formal levels of review for every grievance.  Plaintiff failed to file a grievance for his claim that prison officials interfered with his mail, causing him to miss receipt of a July 24, 2008 Court Order. Plaintiff claims that he was unable to file grievances while he was in administrative segregation. However, Defendants have submitted a declaration showing that AR 740 forms are available in the administrative segregation unit.  Further, Plaintiff filed 17 grievances between 2005 and 2007 and is well aware of the process.  Plaintiff's other arguments – that he could not have filed a grievance by the time he realized the mail was missing and that he was discouraged by the frequent rejections of his administrative grievances and should be excused– are without merit.  Plaintiff did not properly pursue his administrative remedies.  Accordingly, Count VI is dismissed without prejudice.

IV.  Motion for Summary Judgment

    A. Legal Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See, Fed. R. Civ. P. 56(a); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See, Celotex, 477 U.S. at 323.

4

The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).  "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).  Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Where parties introduce evidence outside of the pleadings, a motion to dismiss will be treated as a motion for summary judgment.  Fed. R. Civ. Pro. 12(d).

B.  Count I: Due Process Violation

Plaintiff alleges that he was deprived of due process of law in violation of the Fourteenth Amendment because he was subjected to an atypical and significant hardship when he was placed in administrative segregation for five years without a hearing.

1. Undisputed Facts

Plaintiff is an inmate in the custody of the Nevada Department of Corrections ("NDOC") serving two concurrent sentences of ten years to life for possession of a stolen vehicle and possession of stolen property; he has also been adjudicated a habitual criminal. Pursuant to NDOC AR 521, all inmates in the custody of the NDOC are assigned to a custody category based on their risk factor score, which is calculated, in part, on their criminal history, the nature of the crime for which they are presently serving time, and their conduct while incarcerated. Close custody is "a restrictive level of supervision for inmates whose offense or institutional conduct indicates that they represent a potential for violence, escape, or disruption of institutional operations without the controls inherent in close custody." AR 521. Inmates assigned to close custody are subject to certain housing restrictions, including separation from the general population, assignment to double or single cells when in protective segregation, assignment to single cells when in administrative or disciplinary segregation, and assignment to institutions with fenced housing and gun towers.  Plaintiff entered

NDOC custody at High Desert State Prison ("HDSP") on May 27, 2005, and was categorized as a close custody inmate on June 9, 2005, and recommended for transfer to Ely State Prison ("ESP"). Plaintiff was transferred to ESP on August 15, 2005. Plaintiff was transferred back to HDSP on September 22, 2005, to facilitate his appearance at upcoming court dates in the Eighth Judicial District on case number C-200752. Plaintiff continued to be classified as a close custody inmate and was housed in administrative segregation. HDSP is a medium security institution so the segregation unit is equivalent to close custody housing at ESP. From September 2005 to October 2010, Plaintiff remained a close custody inmate and prison records demonstrate that Plaintiff received a minimum of 33 reviews of his security and housing status by HDSP staff. Specifically, Plaintiff received 24 reviews of his administrative segregation, four due process reviews, four regular reviews and one full classification review. Once Plaintiff's criminal case was closed, he was transferred back to ESP in October 2010.

### 2. Discussion

Incarceration does not completely divest inmates of their procedural due process rights. However, those rights "may be diminished by the needs and exigencies of the institutional environment." Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Liberty interests that entitle an inmate to due process are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (internal citations omitted). A prisoner has no constitutional right to enjoy a particular security classification. Meachum v. Fano, 427 U.S. 215, 224-25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (no liberty interest protected by the Due Process Clause is implicated in a prison's reclassification and transfer decisions). Courts have routinely held that administrative confinement, even for prolonged periods, does present atypical and significant hardships beyond those ordinarily incident to prison life. See, e.g. Jones v. Baker, 155 F.3d 810 (6th Cir.1998) (more than 2 years in

administrative segregation is not atypical and significant); <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706-708 (3d Cir.1997) (15 months administrative segregation is not atypical or significant).

Defendants have shown that there is no dispute of facts that Plaintiff's incarceration in administrative segregation was constitutional.  NDOC followed established guidelines in determining that Plaintiff was a close custody inmate based on the charges against him and his criminal history.[1]  The evidence shows that Plaintiff was transferred to HDSP incident to an on going court proceeding.  Plaintiff was placed in the administrative segregation unit based on the needs and exigencies of the institutional environment because the regular unit of HDSP – a medium security prison – could not accommodate a close custody inmate.  The record demonstrates multiple occasions where Plaintiff's classification status was reviewed, including many times with Plaintiff present.  Plaintiff's assignment to administrative segregation was not for punitive purposes, and Plaintiff's classification status remained close custody for the entire period.  Plaintiff's confinement in administrative segregation was not atypical or a significant hardship, adequate procedural safeguards were utilized, and Plaintiff's due process rights were not violated.  Accordingly, Summary Judgment is granted on Count I.

### 3. Defendants Who are Subject to This Claim

Liability for civil rights violations under 28 U.S.C. § 1983 cannot be predicated on the theory of *respondeat superior*. <u>See</u> *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Id</u>.  See also <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d 675, 680 (9th Cir. 1984).  Thus, "to succeed on a cause of action under section 1983, the plaintiff must prove the defendant[s] [were] the cause in fact and

---

[1] In his opposition, Plaintiff attempts to argue that his classification as a close custody inmate when he entered NDOC custody in 2005 was improper.  Even if this clam could be properly asserted, the statute of limitations has long since expired.  <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 280 (1985) (statute of limitations for 42 U.S.C. § 1983 claims is borrowed from state law).  <u>See also</u> NRS § 11.190(4)(e) (two year statute of limitations on personal injury actions).

the proximate cause of plaintiff's injuries." Kraft v. Jackson, 669 F. Supp. 333, 339 (D.Nev. 1987), aff'd, 872 F.2d 862 (9th Cir. 1989).

Plaintiff fails to clearly state how any of the Defendants specifically acted to deprive him of his constitutional rights. Plaintiff makes broad assertions such as stating that Defendant Neven "is responsible in some manner for events that transpired while he served as warden of HDSP" and claiming "Defendants Neven, Baca, Morrow, Reed, Skolnik, Shaulis, Wuest, Fortier, Graham, and Deal were notified of Equal Protection and federally protected Constitutional Due Process rights and they purposely allowed violations to unprotected as if by conspiratorial agreement." (SAC at 11-12.) Plaintiff has failed to provide facts showing individual acts by Defendants in violation of his due process rights. This provides an additional basis for summary judgment on this claim.

C. Count II

1. Undisputed Facts

Plaintiff claims that his Eighth Amendment rights were violated when he was denied physical therapy and denied transfer to a facility where he could receive physical therapy.

Plaintiff was shot in the leg by Las Vegas police in 2003. In 2003 and 2004 he was prescribed some physical therapy by physicians treating him at that time. NDOC took custody of Plaintiff in May, 2005. On intake, Plaintiff was seen by a Dr. Mumford, who classified Plaintiff as medically stable with physical mobility requiring a flat yard. Plaintiff has seen several other NDOC medical staff and asked for physical therapy. Plaintiff's condition was treated with medication and other medical advice, but he was never prescribed physical therapy by any NDOC physician. Plaintiff also requested transfer to a facility with physical therapy facilities. This request was denied. Plaintiff's medical records indicate that he is able to walk well with the assistance of a cane.

2. Discussion

A prison official violates the Eighth Amendment when: (1) the condition of confinement objectively poses a substantial risk of serious harm (extreme deprivation); and (2) the prison official knows of the substantial risk and ignores it (deliberate indifference or criminal

recklessness). <u>Farmer v. Brennan</u>, 511 U.S. 825, 834-37 (1994); <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). Both of these factors must be present to establish a violation of the Eighth Amendment. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir.2002)  "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir.1992).  Where a patient has received treatment, the question of the form of treatment is "a classic example of a matter for medical judgment" that "does not represent cruel and unusual punishment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 108, 97 S.Ct. 285, 293 (U.S.1976)

Plaintiff received medical care, including pain management care for his leg, on several occasions.  The evidence submitted by Defendants shows that NDOC medical staff diagnosed Plaintiff, noting his adequate ambulation and movement, prescribed him painkillers, and discussed other maters of health with him.  There is no record of a medical diagnosis of NDOC physicians prescribing physical therapy, notwithstanding Plaintiff's requests for it.  In response, Plaintiff has not provided any evidence that the denial of physical therapy is an extreme deprivation or that prison officials recklessly disregarded a substantial risk and ignored it.  Plaintiff claims that physicians outside of NDOC ordered him to receive physical therapy over a year prior to entering NDOC custody and that failure to provide it was a constitutional violation.  Plaintiff also attempts to implicate prison officials who would not transfer him to facilities where physical therapy may have been available, had it been prescribed.  Plaintiff's complaint, in essence, is that he did not receive the kind of care he wanted.  This does not rise to a constitutional violation and the undisputed facts show that Defendants did not act with reckless disregard to a known risk.  See <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir.1996) (a mere "difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference").  Accordingly, Plaintiff's Eight Amendment claim fails.

### 3. Allegations Against Non-Medical Defendants

As stated *supra*, "to succeed on a cause of action under section 1983, the plaintiff must prove the defendant[s] [were] the cause in fact and the proximate cause of plaintiff's injuries." Kraft 669 F. Supp. at 333.

Plaintiff provides no evidence that any of the non-medical professional Defendants participated in the decision not to provide him with physical therapy. Plaintiff claims to have asked several of the Defendants to review his medical records and requested that they arrange a transfer to another facility for purposes of medical care. This is not a situation where NDOC physicians ordered Plaintiff to receive physical therapy and Plaintiff specifically identifies acts of reckless indifference by non-medical Defendants in depriving him of this care. Instead, Plaintiff is attempting to hold non-medical Defendants liable for failing to second guess NDOC medical staff. There are no facts to support this claim against the non-medical Defendants and summary judgment for failure to show individual involvement is granted as to Defendants Skolnik, Baca, Neven, Reed, Wuest, Deal, Graham, Nielson, and Morrow.

### D. Count VII

#### 1. Facts

The only Defendants who are named in this count are Nielson and Baca. On February 5, 2010, Plaintiff was scheduled to be transported to the Clark County Detention Center to await a court date. In order to be transported, the inmate is required to position his hands near the food tray slot so that he can be handcuffed.

In his SAC, Plaintiff claims he complied with the orders given by officers. However incident reports created by Defendants near the time of the incident, record that at approximately 5:00 a.m., Plaintiff refused to follow orders to prepare for transportation to court, stating that because his court date was on the following Monday, he would not agree to be transported until Monday.

Defendant Baca, who was off duty and away from the facility, was telephoned. The incident reports show that Baca ordered an extraction team to be assembled and that Defendant Nielson

10

oversaw the assembly of the extraction team outside Plaintiff's cell.  The incident reports indicate that Nielson gave a further order to Plaintiff to prepare to be handcuffed, which Plaintiff refused.  Plaintiff's SAC claims that no order was given.  Nielson administered a one short burst of chemical agent through the food tray slot.

Nielson ordered the team to put their masks on and, according to the incident reports, gave Plaintiff one last direct order to back up to the food flap so he could be cuffed.  Plaintiff complied and backed up to the food tray slot where handcuffs were placed on him. Plaintiff was removed from the cell and placed in the shower.  Plaintiff was then examined by Nurse Annie Ames, who noted that Plaintiff had no injuries but should receive eye wash to assist with cleaning the pepper spray from his eyes.

2. Discussion

"After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal citations omitted). To prove an Eighth Amendment violation occurred during the undertaking of a prison security measure, the test is whether force was applied "maliciously and sadistically for the very purpose of causing harm." Robins v. Meecham, 60 F.3d 1436, 1440 (9th Cir.1995) (quoting Wilson v. Seiter, 501 U.S. 294, 302 (1991)) (emphasis omitted). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley 475 U.S. at 320–21).  Additionally, the extent of a prisoner's injury is also a factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. Id. Although the absence of serious injury is relevant to the Eighth Amendment inquiry, it is not determinative. Id. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, "[not] every malevolent touch by a prison guard gives rise to a federal cause of action.

11

Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973). The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimus uses of physical force. Id. at 9–10.

Plaintiff's SAC speculates that Baca maliciously directed the use of force at issue, but provides no credible evidence by affidavit or otherwise to this effect. See Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). At the time of the extraction, Defendant Baca was off duty and away from the facility. The only evidence before the Court of Baca's participation is that Baca was called on the telephone and that he ordered that the extraction team be assembled. Baca's order to assemble the extraction team is not a violation of Plaintiff's Eighth Amendment rights. Accordingly, summary judgment is granted against Baca.

The only potential area of disputed fact is whether Plaintiff refused to comply with Defendant Nielson's orders prior to being sprayed with pepper spray. Plaintiff's opposition to the Motion and the SAC claim that he complied with all orders prior to being sprayed. However, Defendants have provided two incident reports created near the time of the incident which support the claim that Plaintiff refused to follow orders prior to being pepper sprayed. Plaintiff has provided no evidence, by affidavit or otherwise, to contradict the account given in the reports, beyond what was contained in the opposition and the SAC. Averments in an opposition or a complaint are not sufficient to create an issue of fact to defeat summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Plaintiff's denial in the SAC and his opposition constitute "uncorroborated and self-serving testimony" that will not prevent a court from entering summary judgment. See Aloha Island Air, Inc., 281 F.3d at 1061.

Under the circumstances presented here, there is no evidence showing that Defendant Nielson's use of pepper spray on Plaintiff was done "maliciously and sadistically for the very purpose of causing harm." Robins at, 60 F.3d 1440. Plaintiff repeatedly refused to comply with the

order of officers to position himself by the food slot to be handcuffed for transport to a court

proceeding.  Defendant Nielson only used a small amount of pepper spray and did not use additional

force on Plaintiff after he complied with Nielson's orders.  Plaintiff did not receive any serious or

lasting injury as a result of Nielson's actions, was able to enter a shower after the incident, and

received an examination by a nurse.  Defendant Nielson's actions did not constitute an excessive use

of force.  Accordingly, summary judgment is granted.

     E. Qualified Immunity

     The defense of qualified immunity protects "government officials . . . from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the

law." Officers can have a reasonable, but mistaken, belief about the facts or about what the law

requires in a certain situation. Saucier v. Katz, 533 U.S. 194, 202 (2001) (overruled on other grounds

by Pearson v. Callahan, 555 U.S. 223 (2009)).; Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043,

1049 (9th Cir. 2002).  Analyzing whether a government official is entitled to qualified immunity

involves two questions: (1) whether the facts alleged show the official violated a constitutional right;

and (2) whether the right was clearly established such that a reasonable government official would

know the conduct was unlawful.  Id. The term "clearly established" means that "[t]he contours of the

right [are] sufficiently clear that a reasonable official would understand that what he is doing violates

that right." Anderson v. Creighton, 483 U.S. 635, 639 (1987)). The key inquiry is whether the

unlawfulness of the act would have been apparent to a reasonable person in the light of preexisting

law at the time the act was committed. See Hope v. Pelzer, 536 U.S. 730, 739 (2002).

     Defendants are entitled to qualified immunity on the claims asserted by Plaintiff in this case.

As discussed, *supra*, the facts do not show that any Defendant violated Plaintiff's constitutional

rights.  Even if Plaintiff's rights had been violated, none of the violations complained of by Plaintiff

took place in circumstances where the right at issue was so clearly established that the Defendants

1  would have been aware that they were acting unlawfully.  Accordingly, summary judgment is granted

2  against all Defendants on the alternative basis of qualified immunity.

3  V.Conclusion

4      **IT IS HEREBY ORDERED THAT** Defendants' Unenumerated Motion to Dismiss (#23) is

5  **GRANTED**.

6      **IT IS FURTHER ORDERED THAT** Defendants' Motion to Strike (#42) is **GRANTED**.

7      **IT IS FURTHER ORDERED THAT** Defendant's Motion for Summary Judgment (#25) is

8  **GRANTED**.

9      **IT IS FURTHER ORDERED THAT** Defendants' Motion to Strike (#50) is GRANTED.

10      **IT IS FURTHER ORDERED THAT** Defendants' Supplemental Motion for Summary

11  Judgment (#49) is **GRANTED**.

12      DATED this 19th day of March 2012.

13

14

15  _____

16  Kent J. Dawson
    United States District Judge

17

18

19

20

21

22

23

24

25

26